UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
JORGE and IMME KLEBE,

              Plaintiffs,

vs.                                                                                 07 CIV 7071 (KMK)

TRI-MUNICIPAL SEWER COMMISSION,

              Defendant.
-----------------------------------------------------------x

       PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
       **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

     By notice of violation and intent to sue dated February 1, 2007, plaintiffs advised defendant of their intent to file suit alleging that Tri Municipal has repeatedly violated the limitations imposed by SPDES permit, NY 0149209, also referenced as DEC ID: 313460006600002 "by causing discharge of **unpermitted waste products into the Hudson River** and thereby degrading said river". According to the notice, such violations were continuing in nature "since at least 2001."

     The SPDES permit contains a total of 15 parameters [pages 3-4 of permit]; for twelve, the permit specifies an effluent limit subject to periodic monitoring. The written results of that monitoring are to be submitted at established times. The

permit explicitly requires defendant "to submit a written notice of compliance or non-compliance with each of the above-scheduled dates no later than 14 days following each elapsed date..." [page 5 of permit].

Tri Municipal does not deny that it is the recipient of the referenced SPDES permit, has knowledge of its content and of the monitoring reports required by said permit and is responsible to determine and remediate any violations of the established effluent limitations.

However, on this motion, defendant claims that it should not have to answer for alleged violations of the Clean Water Act because plaintiffs' notice letter failed to tell it of its own SPDES violations. Defendant claims that the notice letter was required to more clearly specify its violations of record as a means of insuring that defendant had actual notice of the specific violations of the SPDES permit to which plaintiffs' notice letter refers.

Defendant has filed a "motion for summary judgment". Plaintiff contends that such a motion is misnamed as the defendant claims the court lacks subject matter jurisdiction because of plaintiffs' alleged failure to file a proper notice pre-suit. See, F.R.Civ.P. 12(b)(6). See, Natural Resources Defense Council, Inc. v. Southwest Marine, Inc., 236 F.3d 985, 996 (9th Cir. 2000), citing Washington Trout v. McCain Foods, Inc., 45 F.3d 1351, 1354 (9th Cir. 1995), Hallstorm v. Tillamook County, 493 U.S. 20, 26, 107 L.Ed.2d 237, 110 S.Ct. 304 (1979).

A motion for summary judgment proceeds typically after all discovery has been conducted. To the extent defendant is making some factual claim - that its agents could not figure out what plaintiffs claims are here, this matter should not now be heard and should be reserved for a motion following discovery.

To the extent that defendant is simply claiming that the federal court lacks subject matter jurisdiction because of formal deficiencies in the notice letter, that matter can now be heard and we proceed as if the motion was filed under Rule 12(b)(1). [1]

## LEGAL ANALYSIS

Our Court of Appeals explained the regulatory structure implementing the Clean Water Act in <u>Catskill Mountain Chapter of Trout Unlimited, Inc. v. The City of New York</u>, 273 F.3d 481 (2d Cir. 2001). The CWA implements the lofty goal of eliminating the discharge of pollutants by and through a state-regulated system permitting discharges of pollutants within established effluent levels. <u>See</u>, 33 U.S.C. sec. 1342(b), N.Y. Envtl. Conserv. Law. Secs. 17-0105(13), 17-0701.

The CWA contemplates citizen suits, 33 U.S.C. sec. 1365(a) (1)(f), upon

---

[1] For this reason, we do not believe it proper to respond to the Rule 56.1 statement which defendant has filed. On a motion to dismiss, all facts are taken as plead, no materials outside the four corners of the complaint [except documents referenced therein] are to be considered and the Court is to engage in no "fact-finding," but simply must resolve issues of law. While not directly responding to the Rule 56.1 statement, we do note that para. 5 is disputed as plaintiffs contend that the notice letter sufficiently provided the defendant notice of the standards it violated [all those shown to have been exceeded in its monitoring reports since 2001] and how it committed said violations [by and through operation of the sewer treatment facility at the stated address within this judicial district]..

notice to, *inter alia*, the potential defendant polluter.   The issue raised in this case is whether the notice letter served by the Klebes met legal requirements.

EPA regulations require that the notice letter "**shall include sufficient information to *permit the recipient to identify*** the specific standard, limitation or order alleged to have been violated..."  40 C.F.R. sec. 135.3(a) [emphasis added]. Such regulations are entitled to "broad deference".  Christensen v. Harris County, 529 U.S. 576, 587 (2000).

The test to be applied to the notice letter is whether it contained sufficient information to allow the alleged polluter to identify the specific standard which it "allegedly" violated.  [2]

It is clear from this language that the EPA did not require the author of a notice letter to itself identify the specific standard, limitation or order alleged to have been violated.  If the agency so intended, its language would have been quite different.  Rather, the language of the regulation plainly places a different burden on the citizen providing notice: giving sufficient information **to permit the recipient [here defendant Tri Municipal] to identify** the specific standard or limitation alleged to have been violated.

Tri Municipal has not claimed that the plaintiff's notice letter in any way impeded it from gaining notice of those violations of the effluent limitations

---

2  Of course, this formulation is a logical curiosity since the violations are already matter of record on monitoring forms made and maintained by the defendant.

it has committed since 2001. The notice letter here alleges that "Tri Municipal Plant and Compost Facility...has repeatedly violated the limitations imposed by its SPDES permit, causing discharge of unpermitted waste products into the Hudson River..." The February 2007 notice letter asserts that this practice has continued since 2001.  Such temporal references are sufficient to provide a polluter notice of the time of its alleged violations. American Canoe Ass'n v. DC Water & Sewer Authority, 306 F.Supp.2d 30, 36 (D.D.C. 2004), citing Natural Resources Defense Council, Inc., supra. at 996 (9th Cir. 2000)(holding that reference to ongoing violation is sufficiently specific notice under Clean Water Act).

Tri Municipal possesses its permit, which is specifically referenced in the notice letter. That permit sets effluent discharge limitations on each of 12 substances. Periodic monitoring reports, done by Tri Municipal or its agents, show the discharge violations which plaintiffs' notice letter subsumes. Thus, the notice letter clearly allows Tri Municipal, as the recipient, to identify the specific standard or limitation alleged to have been violated. [3] The notice letter is therefore adequate. See, CARS v. US Army Corps of Engineers, 2005 US Dist Ct LEXIS

---

3  In Natural Resources Defense Council, Inc., supra., the Court analyzed the issue of notice at least in part by reference to whether the polluter did understand the notice letter. There, the polluter took remedial action after receipt of the letter and this redounded against its claim that the notice letter was insufficient. However, as noted above, this inquiry turns the Rule 12(b)(1) analysis into one which cannot be determined on a pre-discovery motion to dismiss.

38404 (W.D.N.Y. 2005)(notice letter which provides <u>opportunity</u> for the alleged polluter to identify the specific standards which it has violated is sufficient under CWA).

Defendants submit that the Court of Appeals' decision in <u>Catskill</u> requires greater specificity than plaintiffs provided in their notice of intent.  However, that decision appears to misconceive the SPDES process.  It reads at page 488, "The notice and 60-day delay requirements allow a potential defendant to identify its own violations and bring itself into compliance voluntarily, thus making a costly lawsuit unnecessary."  While this statement is true as stated, actually, long before any such notice letter, the monitoring and reporting process, which are critical aspects of SPDES, *require* a polluter to identify its own violations and rectify them.  Review of the SPDES permit confirms this.  <u>See</u>, SPDES permit attached to defendant's moving papers at page 5 of 8, section b).

The purpose of a citizen suit is **NOT** to provide initial notice to a polluter of its own misdeeds.  Rather, such a notice is necessary because the polluter has failed to self-correct as required in and by the SPDES permit itself *and* because those government agencies responsible for taking primary enforcement action under the CWA have failed to initiate such action.

The 60 day notice requirement is intended to allow these government agencies -  now advised that some citizen intends to pursue the matter legally - to

initiate enforcement action. Here, despite such advice, neither the DEC nor the EPA initiated enforcement action.

The notion that the 60 day notice letter is the CWA's primary means of advising a potential defendant of its violations of its own permits is simply erroneous. The CWA and implementing state and federal regulations provide specific monitoring and self-correction requirements far earlier in the regulatory process for these purposes.

Likewise, the notion that the citizen needs to advise the polluter which is governed by SPDES requirements as to how it is polluting the Hudson River is absurd: the whole regulatory process is intended to insure that the polluter knows what it can and cannot do and what it is doing. Requiring the polluter to conduct periodic monitoring and generate and review compliance reports on these issues is so intended.

There is no claim here that Tri Municipal failed to do this self-monitoring or was without possession of the monitoring reports showing the specific exceedance of effluent limitations which caused, to use the language of the notice letter, "the discharge of unpermitted waste products" into the Hudson River.

Given that the whole purpose of the Tri Municipal facility was to treat sewage, the phase "unpermitted waste products" plainly signaled Tri Municipal of its violation and, in context, allowed it sufficient information to "identify the

specific standard, limitation or order alleged to have been violated".

This situation is distinguishable from that which the Court of Appeals addressed in Catskill, supra., where there was not SPDES permit and no established effluent limitations for the Esopus Creek. Thus, the notice letter served a different purpose: providing an alleged polluter notice of what effluent discharge the citizens believed degraded the Creek. This was not done in the same context as here; there was no SPDES permit to reference or monitoring reports demonstrating the violations of the effluent limitations therein imposed.

Thus, while the plaintiffs here referenced a set of documents from which the polluter could easily identify the specific standard alleged to be violated, in Catskill, the burden on the groups proposing the citizen suit was different: identifying what impermissible substances the City of New York was depositing in the creek contrary to the CWA? This could not be done by reference to limitations already imposed since there was no extant SPDES permit governing this waterway. In such a case, the Court of Appeals' holding makes great sense: "To enable the defendant to identify each violation that will be alleged, then, the NOI letter must specify each pollutant unlawfully discharged that will be alleged in a subsequent complaint." Id. at 488.

However, where, as here, there is a SPDES permit and it is referenced in the Complaint, the current notice letter suffices to meet the regulatory purpose because

such reference allows the polluter to identify the specific violations, the purpose of the notice letter. Again, comparison with the only other case defendant cites on this issue is illustrative. In <u>Environmental Protection Agency, ex rel. McKeown v. Port Authority of New York & New Jersey</u>, 162 F.Supp.2d 173 (S.D.N.Y. 2000), as in <u>Catskill</u>, the target of the citizen suit was not implementing a relevant SPDES permit. Rather, the citizen suit alleged that the Port Authority was responsible for depositing leachate in derogation of the CWA. The district court dismissed this aspect of the suit holding that "Plaintiff's sweeping allegations do not charge defendants with violating any effluent standards or limitations." Here, as explained above, plaintiffs do charge the defendant with violating effluent standards and limitation set forth in a specific SPDES permit during a specific time frame. As that provides the "recipient to identify the specific standard, limitation or order alleged to have been violated," the notice letter is sufficient and the motion should be denied.[4]

---

[4] The notice letter specifically states that Tri Municipal "has repeatedly violated **the limitations imposed by the SPDES permit, causing discharge of unpermitted waste products...**" This language does not limit the violation to a specific violation, but plainly raised issue with all the violations of the limitations imposed by the permit during the relevant time period. As relevant to this motion, most critically, this language plainly allows defendant to identify the specific standard "alleged to have been violated". We note that in citing the regulation and underscoring language therefrom, defendant has, we submit, placed the incorrect emphasis. It has focused on "the specific standard....". However, the language of greater relevance now is "shall include sufficient information to permit the recipient to identify".

The regulation, which is entitled to broad deference, does not state that the citizen must identify the standard; rather, the citizen must provide the recipient, here defendant, with sufficient information to permit it to identify its own violation. The current notice letter plainly meets that standard.

In the alternative, should this court disagree with plaintiffs, the proper remedy is not dismissal of the case with prejudice, but, rather, dismissal without prejudice to allow refiling after further compliance with 33 U.S.C. sec. 1365(b)(1)(A). We would respectfully request that opportunity here should the Court accept defendant's position on the insufficiency of the notice letter.

## **CONCLUSION**

Defendant's motion is due to be denied and the matter set down for a conference to conclude a scheduling order permitting discovery.

                Respectfully submitted,

                MICHAEL H. SUSSMAN [3497]
                Counsel for Plaintiff
                Sussman & Watkins
                PO Box 1005
                Goshen, NY 10924

                Dated: April 13 2008